The International Typographical Union appeals from an order of the Law Division refusing to set aside service of the summons and determining that the service was effective. The appellant rests on the contention that it was not transacting business in New Jersey in such a manner and to such an extent as to subject it to the jurisdiction of our courts.
The International is a voluntary association whose members are 850 local unions or groups which in turn are voluntary membership associations, each functioning under a charter issued by the International. The primary object for which the International was organized and exists is to improve the economic condition of the members of its locals and of other workers in their trade who will join with them. The most important means for the fulfillment of these objects are the local unions themselves. While the latter enjoy a large degree of autonomy, their action is subject to the control of the International officers in certain respects. Every contract between a local and an employer must be submitted to the International president for his approval or disapproval, in order to make sure that the contract contains certain minimum terms set forth in the International's Book of Laws. No strike can be called by a local except with the approval of the International Executive Council. Part of the International organization are twelve Representatives appointed by the president, and serving under his direction and control. They encourage printers to embrace unionism where no union presently exists. They examine the books and records of local unions and recommend measures "that will tend to safeguard the finances or facilitate the business of the union." On assignment by the president, they aid the locals in the negotiation of contracts, and the settlement of differences with employers, and in the conduct of strikes. *Page 296 
There are a number of locals in New Jersey, one of them in Trenton. The Trenton local, acting with the approval of the Executive Council, began a strike against the Trenton Times in January, 1946, a strike that still continued when depositions were taken two years later. In this strike, the International has taken a very active part. It has paid to the local for strike benefits for its members and other assistance, $271,000. The International president in March, 1946, stationed one of the Representatives, Carl Berreiter, at Trenton to assist in the fight. His salary and expenses, paid by the International, averaged $800 a month. Whether included in the first named sum or not, is not clear, but the International provided $100,000 which was used to start a newspaper in Trenton as an aid in the prosecution of the strike. Mr. Berreiter edited the paper. In the present action, damages are sought on account of an alleged libel printed in this newspaper.
It seems entirely clear that the International was carrying on its business in New Jersey at the time of the strike and was liable to suit here, and that Mr. Berreiter was its agent upon whom process against the International might be served. Nortonv. Berlin Iron Bridge Co., 51 N.J.L. 442 (Sup. Ct. 1889);Newark, etc., Club v. Theatrical, etc., Union, 125 N.J. Eq. 575
(Ch. 1939); Moran v. International, etc., Operators,139 N.J. Eq. 559 (Ch. 1947). Judge Smalley, in the Law Division, aptly summarized the essential facts:
"This is no instance of some drayman carting materials through this state. This is no instance of the defendant accomplishing its purpose through a subsidiary corporation. This is no newspaper vendor selling newspapers printed and published outside the confines of this state. This is no isolated visit of some representative of the defendant to the `local.' This is an instance where the defendant, helping its own by the giving of aid, with men and money, comes into this state to do the very business it was established to do."
The order will be affirmed. *Page 297